**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHERYL TENZYK and LARRY ALLEN, individually and on behalf of all others similarly situated, | Case No. 2:18-cv-06121 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| AMERICAN HONDA MOTOR CO., INC., a California Corporation, and HONDA NORTH AMERICA, INC., a Delaware Corporation, | |
| Defendants. | |

Plaintiffs Sheryl Tenzyk and Larry Allen, individually and on behalf of all others similarly situated, allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters:

<u>NATURE OF ACTION</u>

1.     Plaintiffs bring this Class Action Complaint against American Honda Motor Co., Inc., Honda North America, Inc., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other entities (collectively, "Honda" or "Defendants"), for damages and equitable relief.

2.     One of the most basic safety features in every car in its implementation of a system that allows the driver to easily take the vehicle out of gear and place the vehicle in "Park," with the knowledge and confidence that their vehicle will not inadvertently roll away after the driver exits the vehicle.

3.     Honda broke this minimum safety standard obligation. Its 2016, 2017 and, upon information and belief, its 2018 Honda Civic vehicles equipped with CVT transmissions ("Class Vehicles") have a common defect such that their drivers are unable to determine whether the Class Vehicles are properly placed in "Park" before exiting the vehicles. The Class Vehicles fail

to provide notice to drivers that their Vehicle is out-of-gear, they fail to automatically activate the Electric Parking Brake in certain situations (such as when the driver exits the vehicle or when the driver's door is opened), and they are prone to—and actually do—unintentionally roll away (the "Rollaway Defect"), often causing crashes or injuries.

4.      The Defective Shifter's sole reliance on visual feedback to convey gear selection has been dangerous and ineffective. Complaints on NHSTA and online indicate that Class Vehicle owners and lessees are unable to determine whether the vehicle is put into the desired gear, resulting in a multitude of rollaways, accidents, and injuries.

5.      Honda recalled approximately 350,000 2016 Honda Civic Models with the defect at issue here.[1]  Specifically, the recall was initiated because "if the EPB (electric parking brake) isn't properly set and a parking gear is not selected by the driver, the vehicle could potentially roll away, increasing risk of a crash."[2]

6.      Honda attempted to fix the Rollaway Defect in its 2016 model year (MY) Class Vehicles via a software update to the Vehicle Stability Assist system such that the Electronic Parking Brake would—or at least should—engage when the vehicle is parked and before the driver leaves the car. Upon information and belief, however, this software update did not resolve or repair the Rollaway Defect.

**WARRANTY CLAIM INFORMATION**

| Operation Number | Description | Flat Rate Time | Defect Code | Symptom Code | Template ID | Failed Part Number |
|---|---|---|---|---|---|---|
| 4135A6 | Update the VSA modulator control unit and do the VSA sensor neutral position memorization, TPMS calibration, and clutch pedal stroke sensor zero point (if applicable), then clear any stored DTCs | 0.4 hr | 6EP00 | KC600 | 16-090A | 57100-TBA-A14 |

---

[1] http://www.autoguide.com/auto-news/2016/10/2016-honda-civic-recalled-for-electric-parking-brake-issue.html.

[2] *Id.*

7.      Despite the 2016 MY recall, Honda manufactured, marketed, and sold its substantially similar—virtually identical—2017 MY, and is or will be selling its 2018 MY Civic Class Vehicles in the same defective condition with the same Rollaway Defect.

8.      Despite the 2016 MY recall, Honda manufactured, marketed, and sold its substantially similar—virtually identical—2017 MY, and is or will be selling its 2018 MY Civic Class Vehicles in the same defective condition with the same Rollaway Defect.

9.      Since and despite its 2016 MY Class Vehicle recall, Honda has received consumer complaints and reports of accidents regarding the Rollaway Defect in Class Vehicles, including through the National Highway Traffic Safety Administration ("NHTSA"). To-date, Honda has not recalled any 2017 MY Class Vehicles for the Rollaway Defect.

10.      Honda's failure to fix the Rollaway Defect, despite its knowledge of the problem, caused Plaintiffs and other owners of Class Vehicles ("Class Members") to suffer damages and be placed at risk due to this serious safety issue.

11.      Upon information and belief, nearly a million Class Vehicles with the Rollaway Defect remain in use by unsuspecting owners. As a result of the Rollaway Defect, the Class Vehicles are a hazard to their owners and the public.

12.      Plaintiffs, on behalf of themselves and similarly situated Class Members, seek damages for Honda's conduct with regard to the Rollaway Defect as alleged in this complaint. Plaintiffs would not have purchased their Class Vehicles, or would have paid less for it than he did, had he been advised of the Rollaway Defect at the point of sale. Plaintiffs and the putative Class Members did not receive the benefit of their bargain.

## JURISDICTION AND VENUE

13.      The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because there are more than 100 Members of the proposed Class, because the claims of the putative class Members exceed $5 million in the aggregate, exclusive of interest and costs, and because at least one of the Members of the proposed Class is a citizen of a different state than Honda.

14.     The Court can exercise personal jurisdiction over Defendants because Defendants' actions summarized in this complaint occurred in this District so as to subject them to *in personam* jurisdiction in this District.

15.     This Court can exercise personal jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

16.     Venue is proper in this District under 28 U.S.C. 1391 (a)-(c) because Plaintiff Tenzyk resides in this District and obtained her vehicle from a Honda branch located in a county within this District. Additionally, Defendants distribute Class Vehicles in this District and receive substantial compensation and profits from the sale and lease of Class Vehicles in this District.

## **PARTIES**

17.     Plaintiff Sheryl Tenzyk is a resident and citizen of Brookhaven, New York. Plaintiff Tenzyk leased a 2016 Honda Civic hatchback from Apple Honda in Riverhead, New York in in March 2016.

18.     Plaintiff Larry Allen is a resident and citizen of Morrisonville, New York. Plaintiff Allen leased a 2017 Honda Civic hatchback from Della Honda in Plattsburgh, New York in February 2017.

19.     Defendant American Honda Motor Co., Inc. ("AHM") is a corporation organized under the laws of the State of California and has its principal place of business in Torrance, California. AHM operates, maintains offices, and/or conducts business in all fifty states.

20.     Defendant Honda North America, Inc. is a Delaware corporation with its principal place of business in Torrance, California.

21.     Defendants (collectively referred to as "Honda") are the developers, designers, manufacturers, assemblers, testers, inspectors, marketers, advertisers, distributors, sellers, and/or warrantors of the Class Vehicles.

## FACTUAL ALLEGATIONS

**I.    Plaintiff Sheryl Tenzyk**

Plaintiff Tenzyk was looking for a reliable and safe car to transport herself. Prior to leasing her Class Vehicle, Plaintiff Tenzyk researched 2016 Honda Civics and reviewed and relied on the multitude of features it came with, including the safety features. Thereafter, Plaintiff Tenzyk leased a 2016 Honda Civic hatchback from Apple Honda in Riverhead, New York.

22.    At the time Plaintiff Tenzyk leased her vehicle, Honda knew that the Rollaway Defect could lead to vehicle rollaway incidents but did not disclose this defect to Plaintiff Tenzyk.  Plaintiff Tenzyk leased—then operated—the vehicle on the reasonable but mistaken belief that her Class Vehicle was safe to operate as designed.

23.    In or around November 2017, Plaintiff Tenzyk turned on her Class Vehicle, which was in park, in her driveway and went inside to get some money to run errands. Upon coming back outside of her home, she saw her Class Vehicle had rolled down her driveway and across the street and into her neighbors' yard. When the Class Vehicle rolled away, it hit a cable pole and damaged the front part of the bumper. Frightened, she ran to her Class Vehicle to find it still running and in neutral. She was able to drive it back up to her driveway and brought it to a local body shop a couple days later.

24.    A couple of days later, Plaintiff Tenzyk Brought it to Monty's Body Shop around the corner from her residence. She paid approximately $700 for the repairs to the bumper. Plaintiff Tenzyk was very shaken up by roll away incident because she knew the car was in park when she left it.

25.    In May 2018, with approximately 22,000 miles on her Class Vehicle, Plaintiff Tenzyk drove to the gym, Unique Fitness Express 5715 Sunrise Highway, Holbrook, New York,

1174, and put her Class Vehicle into park. Upon leaving the gym that afternoon, she noticed her Class Vehicle had rolled into a handicapped spot behind the space she had parked in.

26.     Immediately thereafter, Plaintiff Tenzyk called Honda corporate to get some answers as to why her Class Vehicle was rolling away despite being put in park. Plaintiff Tenzyk talked to a representative from Honda and told them the two instances in which her Class Vehicle had rolled away, however, the Honda representative assigned to her case never got in contact with her and sent Plaintiff Tenzyk a letter closing her case.

27.     In July 2018, dissatisfied with Honda corporate's response, Plaintiff Tenzyk called the customer service depart at Apple Honda in Riverhead New York and described to them in detail the two incidents in which her Class Vehicle rolled away despite being put in park. Further, Plaintiff Tenzyk described how she had conveyed this to Honda corporate to no avail. In response, the service technician in which she spoke to told her that "nothing was wrong with her vehicle". Further, he told her the issues she experienced were likely caused by "user error" rather than the Rollaway Defect. Plaintiff Tenzyk was not asked to bring her Class Vehicle in for an inspection.

28.     Neither Honda nor any of its agents, dealers, or representatives informed Plaintiff Tenzyk of the Rollaway Defect prior to leasing her vehicle or after the vehicle's Rollaway Defect manifested.

29.     Had Plaintiff Tenzyk been advised of the Rollaway Defect at or before leasing, she would not have leased her vehicle or she would have paid less to lease the vehicle than she did. She did not receive the benefit of her bargain.

**II.     Plaintiff Larry Allen**

30.     Plaintiff Allen was looking for a reliable and safe car to transport himself and his wife. Prior to purchasing his Class Vehicle, Plaintiff Allen visited Honda's website in which he researched 2017 Honda Civic hatchbacks and reviewed and relied on the multitude of features it came with, including the safety features. Thereafter, Plaintiff Larry Allen leased a 2017 Honda

Civic hatchback from Della Honda (an authorized Honda dealership) located in Plattsburgh, New York.

At the time Plaintiff Allen leased his vehicle, Honda knew that the Rollaway Defect could lead to vehicle rollaway incidents but did not disclose this defect to Plaintiff Allen. Plaintiff Allen leased—then operated—the vehicle on the reasonable but mistaken belief that his Class Vehicle was safe to operate as designed.

31.     On December 19, 2017, Plaintiff Allen had a luncheon with his co-workers in downtown Plattsburgh New York. Plaintiff Allen parked his vehicle across the street from the restaurant that had a slight downhill. Upon arrival, Plaintiff Allen put his vehicle in park, locked it, and went into the restaurant. 10 minutes into the meal, his assistant who was also attending the luncheon, asked him if he had parked across the street. When Plaintiff Allen responded yes, his secretary pointed to his Class Vehicle that had rolled down the parking lot and crashed into a truck.

32.     Thereafter, Plaintiff Allen went outside to examine the situation and determined his car had rolled away on its own. Plaintiff Allen called the police and notified the driver of the truck there had been an accident.

33.     Given this accident occurred around the holidays, in late December 2017 or early January 2018, Plaintiff Allen called Auto Barn Collison Center Inc., to make an appointment regarding the damage sustained to his Class Vehicle. Auto Barn indicated to Plaintiff Allen that due to having a high volume of cars, they would not be able to see him until February at the earliest. Disappointed, Plaintiff Allen reluctantly agreed to take his Class Vehicle to Auto Barn at that time.

34.     On February 5, 2018, with approximately 11,000 miles on his vehicle, Plaintiff Allen took his vehicle to Auto Barn Collision Center Inc. for an inspection. Plaintiff Allen described what happened on December 19, 2017 when his Class Vehicle rolled away despite

being put into park, where he was informed that his rear bumper and vent needed to be replaced without any further explanation.

35.    The total cost of the repair was $1,029.43. While it was covered under Plaintiff Allen 's insurance policy, Plaintiff had to pay a $500 deductible to have his vehicle repaired.

36.    Neither Honda nor any of its agents, dealers, or representatives informed Plaintiff Allen of the Rollaway Defect prior to leasing his vehicle or after the vehicle's Rollaway Defect manifested.

37.    Had Plaintiff Allen been advised of the Rollaway Defect at or before leasing, he would not have leased his vehicle or he would have paid less to lease the vehicle than he did. He did not receive the benefit of his bargain.

**III.    Honda Knew That The Shifter Was Defective And Unreasonably Dangerous**

38.    Since 2016, complaints to NHSTA and through its online reporting, as well as other online forums indicate that Class Vehicle owners and lessees are unable to determine whether the vehicle in the desired gear, which has resulted in a multitude of rollaways, accidents, and injuries.

39.    Upon reasonable inspection and testing of the Class Vehicles and each of their components, Honda knew or should have known the Class Vehicles were prone to the Rollaway Defect.

40.    Honda knew or should have known of the Rollaway Defect, but failed to take reasonable corrective steps to prevent or cure the Defect.

41.    Honda had sufficient knowledge, expertise, availability, and resources to inspect the Class Vehicles for defects prior to placing them on the market.

42.    Honda had a duty to reasonably inspect the Class Vehicles for defects prior to placing them on the market.

43.    Honda failed properly to inspect and confirm the safety of the Class Vehicles before their entry into the stream of commerce and before their sale to unsuspecting consumers.

44.     Honda failed to complete reasonable tests and inspections of the Class Vehicles, which would have revealed the Rollaway Defect.

45.     The shifter cannot and does not perform as intended, because neither Honda, nor any reasonable car designer, would design a gear shifter that only shifts into the intended gear some of the time, or randomly shifts to gears other than the one selected. Honda has provided no information to buyers or lessees to inform them that the shifters within the Class Vehicles are unreliable (*i.e.* that the vehicles have the Rollaway Defect).

46.     Upon information and belief, Honda's knowledge about the problems with the shifter as described in this complaint is reflected in: its internal communications, including memoranda and e-mails related to the Rollaway Defect; reports of other incidents—including those compiled in the NHTSA database, which Honda regularly reviews—involving Honda's vehicles with this defective shifter design; Honda's compilations and analyses of crash data; and the tests conducted by Honda and others, including but not limited to failure mode and effects analyses (FMEA), human factors simulations, pre-release vehicle evaluation tests, computer simulations, and cost/benefit analyses.

47.     Despite knowledge of the Rollaway Defect, Honda failed to warn Class Members oof the Defect. Specifically, none of the Class Members received a warning that the gear shifter in their Class Vehicles may not perform properly and as warranted, or that as a result drivers may experience a rollaway or similar occurrence due to the Rollaway Defect.

48.     Honda, through its own research and development, would have known that reasonable alternative designs are available to prevent rollaway incidents like those involving this shifter design. Such alternative designs of electronic shifters, which include safeguards like automatically putting the vehicle in park when the driver's door opens or when the ignition is turned off, prevent rollaways and are used by other manufacturers, including but not limited to BMW.

**IV.    Reports To NHTSA Recount Incidents Of Vehicle Rollaway**

49.    NHTSA has received reports of rollaway incidents involving the Class Vehicles, including the reports copied verbatim below:

NHSTA Complaint on April 24, 2017 for 2017 Civic: MY NEW CAR WILL LET YOU TURN OFF (PUSH BUTTON) AND GET OUT AND WALK AWAY WHILE STILL BEING IN GEAR. I EXITED MY VEHICLE IN THIS SITUATION AND IT ROLLED DOWN THE DRIVE AND HIT A TREE. IT WAS 3 FEET FROM ROLLING INTO A HIGHWAY THAT COULD HAVE RESULTED IN SERIOUS INJURY OR DEATH. OLDER CARS YOU CANNOT REMOVE THE KEY. YOU SHOULD NOT BE ABLE TO TURN OFF THE CAR WITHOUT SOME OTHER SAFETY FEATURE TO KEEP THIS FROM HAPPENING.

NHSTA Complaint on August 11, 2017 for 2017 Civic: WHEN PULLING INTO A PARKING SPOT I PUT THE CAR INTO PARK BUT THE CAR KEPT MOVING FORWARD, OVER A SIDEWALK AND INTO A BUILDING. I PUT THE CAR IN REVERSE AND COULD NOT STOP THE CAR UNTIL IT HIT ANOTHER OBJECT. HAD DAMAGE TO THE FRONT BUMPER AND GRILL.

NHSTA Complaint on August 17, 2017 for 2017 Civic: I WAS TURNING INTO A PARKING LOT WHERE I THEN PROCEEDED TO PARK MY CAR INTO A PARKING SPOT. I PUT THE CAR IN PARK AND THE CAR CONTINUED TO MOVE FORWARD. THE CAR ENDED UP HITTING THE BUILDING THAT WAS 2 FEET IN FRONT OF ME. THE CAR THEN REVERSED ON IT'S OWN AND CHARGED FORWARD TO HIT THE BUILDING AGAIN. THE SECOND TIME IT HIT THE BUILDING THE AIR BAG WENT OFF. I TRIED TO PUT THE CAR IN REVERSE MANUALLY TO PREVENT IT FROM HITTING THE BUILDING. WHEN I DID THIS, THE CAR ACCELERATED BACKWARDS.

NHSTA Complaint on February 17, 2017 for 2016 Civic- THERE ARE THREE ISSUES WITH THIS 2016 HONDA CIVIC. HOWEVER ONE OF THESE ISSUES MUST BE ADDRESSED "IMMEDIATELY". WHEN YOU GO TO PARK YOUR CAR,(HAVING IT IN A STATIONARY POSITION) YOU PUSH THE PUSH BUTTON TO TURN IT OFF. HOWEVER IF YOUR VEHICLE IS STILL IN DRIVE WHEN YOU TURN IT OFF, IT "TURNS OFF" AND GIVES YOU A WARNING TONE. BUT!!!! IF YOUR HARD OF HEARING, AND YOU DON'T HEAR THIS TONE, YOU GO TO GET OUT OF YOUR VEHICLE AND IT EITHER ROLLS BACKWARDS (KNOCKING YOU DOWN WITH THE DOOR) AS IT ROLLS AWAY FROM YOU (AND HOPEFULLY NOT OVER YOU), "OR" IT ROLLS FORWARD, RUNNING COMPLETELY AWAY FROM YOU. THERE IS NO SAFETY FEATURE, SUCH AS THE ACURA. THE ACURA AUTOMATICALLY LOCKS YOUR CARS POSITION SO IT DOESN'T ROLL AWAY FROM YOU OR OVER YOU... MY BOYFRIEND

HAS BEEN HURT TWICE DUE TO THIS UNSAFE FEATURE. AND I MYSELF HAVE BEEN SURPRISED BY IT ONCE. THIS CAR ONLY HAS 5,000 MILES ON IT. QUESTION IS? HOW MANY MORE MILES WILL IT BE ABLE TO ACCUMULATE BEFORE KILLING ONE OF US, OR SOMEONE ELSE? IF THERE WAS A WAY FOR ME TO SEND YOU A VIDEO OF THIS I WOULD. BUT I DO NOT KNOW HOW TO UPLOAD FROM MY PHONE.

NHSTA Complaint on December 12, 2016 for 2016 Civic-CAR ALLOWED ITSELF TO BE TURNED OFF WHILE STILL IN DRIVE. UPON LEAVING CAR IT ROLLED DOWN INCLINE INTO ANOTHER CAR. MY HUSBANDS HONDA (2011 CRV) DOES NOT ALLOW THE CAR TO TURNED OFF IN DRIVE NOR DOES IT ALLOW THE KEY TO BE REMOVED FROM THE IGNITION WHILE STILL IN GEAR/DRIVE. *TR

NHSTA Complaint on December 06, 2016, for 2016 Civic-TL* THE CONTACT OWNS A 2016 HONDA CIVIC. WHILE THE VEHICLE WAS PARKED WITH THE PARKING BRAKE APPLIED, IT ROLLED AWAY AND CRASHED INTO A HANDICAP PARKING POLE. THERE WERE NO INJURIES AND A POLICE REPORT WAS NOT FILED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE APPLICATION OF THE ELECTRICAL CONTROL UNIT FAILED. THE VEHICLE WAS NOT REPAIRED. THE VIN WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 16V725000 (PARKING BRAKE). THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 4,050. UPDATED 01/25/17*LJ

NHSTA Complaint on November 02, 2016, for 2016, Civic-THE ELECTRIC EMERGENCY BRAKE FAILED. THE CAR WAS PARKED, IGNITION TURNED OFF, EMERGENCY BRAKE APPLIED, AND LEFT THE VEHICLE. WHEN I RETURNED, THE CAR HAD ROLLED BACKWARDS DOWN A ROAD AND SLAMMED INTO ANOTHER PARKED CAR CAUSING DAMAGE TO BOTH VEHICLES. NO INJURIES RELATED TO THE ACCIDENT. POLICE REPORT IS NOT AVAILABLE YET. WE FOUND ABOUT THE RECALL THAT WAS ISSUED IN MID-OCTOBER BUT WE HAVE NOT BEEN NOTIFIED/CONTACTED YET.

NHSTA Complaint on October 14, 2016, for 2016, Civic-I PARKED MY 2016 HONDA CIVIC IN MY GARAGE AND SET THE PARKING BRAKE. I EXITED THE VEHICLE AND WALKED INTO THE HOUSE. THE VEHICLE MUST HAVE ROLLED OUT OF THE GARAGE (GARAGE SURFACE IS RATHER FLAT, PROBABLY WHY I DIDN'T SEE THIS HAPPEN) DOWN MY SLOPED DRIVEWAY ENDED UP IN THE NEIGHBORS YARD. VEHICLE SUSTAINED DAMAGE TO THE EXHAUST, BUMPER, UNDERSIDE OF TRUNK AND RIGHT REAR TIRE. THANK GOODNESS THAT NOBODY WAS INJURED. AT THE TIME I THOUGHT MAYBE I MADE A MISTAKE

BUT NOW THAT HONDA HAS ISSUED A RECALL ON THE PARKING BRAKE I UNDERSTAND WHAT REALLY HAPPENED. I DID SET THE PARKING BRAKE BUT IT APPEARS THAT IT DID NOT EVER SET. I HAVE SINCE SEEN THIS HAPPEN AGAIN WHEN I HAVE PARKED ON OTHER SOMEWHAT FLAT SURFACES AND RETURNED TO MY VEHICLE AND IT APPEARS AS THOUGH IT HAD MOVED A SMALL AMOUNT. WITH THE RELEASE OF DETAILS IN THE SAFETY RECALL (NHTSA CAMPAIGN NUMBER: 16V725000) I NOW UNDERSTAND MORE ABOUT WHAT HAPPENED.

## CLASS ACTION ALLEGATIONS

50.     <u>Class Definition</u>. Plaintiffs bring this civil class action on behalf of themselves individually and on behalf of all other similarly situated persons as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

51.     Plaintiffs will seek certification of a nationwide class preliminarily defined as follows:

> All persons who purchased or leased a 2016 to 2018 MY Honda Civic equipped with a CVT Transmission in the United States (the "Class")

52.     Plaintiffs will also seek certification of a Subclass defined as follows:

> A New York Subclass consisting of: All persons who purchased or leased a 2016 to 2018 Honda Civic equipped with a CVT transmission in New York (the "New York Subclass")

53.     Excluded from the Class and New York Subclass are Honda, its parents, subsidiaries, affiliates, officers and directors, any entity in which Honda has controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family Members.

54.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and New York Subclass before the Court determines whether certification is appropriate.

55.     <u>*Numerosity and Ascertainability*</u>. The Members of the Class and New York Subclass are so numerous that joinder is impractical.  On information and belief, the Class and New York Subclass are comprised of tens of thousands of Class Vehicle owners and lessees throughout the United States. Moreover, the Class and New York Subclass are composed of an

easily ascertainable, readily identifiable set of individuals and entities who purchased or leased Class Vehicles. The precise number of Class and New York Subclass Members can be ascertained only through discovery, which includes Honda's network sales, service, and complaint records. The disposition of their claims through a class action will benefit both the parties and this Court. Furthermore, Members of the Class and New York Subclass may be identified from records maintained by Honda and its agents, and may be notified of the pendency of this action by mail, or other appropriate means, using a form of notice customarily used in consumer class actions.

56.     *Typicality*. The claims of the representative Plaintiffs are typical of the claims of the Class and New York Subclass, as such claims arise out of Honda's conduct in designing, manufacturing, warranting, and selling the Class Vehicles with the Rollaway Defect.

57.     *Adequate Representation*. Plaintiffs will fairly and adequately protect the interests of Class Members and have no interests antagonistic to those of the Class or New York Subclass. Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of consumer class actions, including, but not limited to, consumer class actions involving, *inter alia*, breach of warranties, product liability, and product design defects.

58.     *Commonality*. There are numerous questions of law and fact common to the Class and New York Subclass that will materially advance the litigation include, but are not limited to, the following:

a.     Whether Honda engaged in the conduct alleged herein;

b.     Whether the Class Vehicles contain a safety defect;

c.     Whether Honda knew about the Rollaway Defect and, if so, how long Honda has known of it;

d.     Whether Honda defectively designed or manufactured the Class Vehicles;

e.     Whether Plaintiffs and Class Members were exposed to the same omissions of fact or misleading advertising regarding the Rollaway Defect;

f.      Whether Honda's conduct violates consumer protection statutes, false advertising laws, sales contracts, warranty laws, and other laws associated herein;

g.      Whether Plaintiffs and Class Members overpaid for their Class Vehicles;

h.      Whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief, and

i.      Whether Plaintiffs and Class Members are entitled to damages and other monetary relief and, if so, in what amount.

59.     *Predominance*. This class action is appropriate for certification because questions of law and fact common to Class and New York Subclass Members predominate over questions affecting only individual Members.

60.     *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Requiring individual Class and New York Subclass Members to bring separate actions would create a multiplicity of lawsuits burdening the court system and the risks of inconsistent rulings and of contradictory judgments. Alternatively, the diminution in value attributable to the defect may not be sufficient to economically justify individual litigation of these claims. Because the damages suffered by each Class and New York Subclass Member are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed, multibillion-dollar corporation, this class action is the only way each Class and New York Subclass Member can redress the harm that Honda caused.

61.     This lawsuit is also maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class and New York Subclass Members, thereby making final injunctive relief appropriate with respect to the Class and New York Subclass.

## TOLLING OF STATUTES OF LIMITATIONS

62.     *Discovery Rule*. Plaintiffs claims accrued upon discovery that the shifter system that Honda designed, manufactured, and installed into the Class Vehicles suffered from the Rollaway Defect, and that the Rollaway Defect could not be repaired.  While Honda knew of and

omitted the Rollaway Defect, Plaintiffs, Class Members, and New York Subclass Members could not and did not discover this fact through reasonable diligent investigation until after they experienced rollaway incidents, and reasonably excluded other potential causes of the failures.

63.   *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the Rollaway Defect.  Honda kept Plaintiffs and all Class and New York Subclass Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class and New York Subclass Members.  Plaintiffs and Class Members could not reasonably have discovered the Rollaway Defect.

64.   *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiffs, as well as Class and New York Subclass Members, the true character, quality, and nature of the Class Vehicles' shifter system.   At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Class Vehicles' shifters.   The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class and Subclass Members.   Plaintiffs and Class and New York Subclass Members reasonably relied upon Honda's knowing and/or active omissions.   Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

65.   *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the Rollaway Defect.  The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiffs and Class and New York Subclass Members.   When Plaintiffs learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims.  Honda wrongfully omitted its deceitful acts described above.  Should it be necessary, therefore, all applicable statutes of limitation are tolled under the

doctrine of equitable tolling.

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
**(On behalf of the National Class)**

66.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

67.     Plaintiffs bring this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the New York Subclass against Honda.

68.     Honda expressly warranted that it would cover the cost of all parts and labor to repair any item on the vehicle when it left the manufacturing plant that is defective in material or workmanship.

69.     Further, Honda advertised the Class vehicles as "safe" and "reliable" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the Rollaway Defect, which renders the Class vehicles dangerous and unreliable.

70.     Honda materially breached its expressed warranties by selling and leasing Class Vehicles that contained the Rollaway Defect, which rendered the Class vehicles unsafe or unfit for use as warranted. Thus, at the point of sale, the written warranties were breached by Honda as the Class Vehicles were unreasonably dangerous and contained an inherent design defect.

71.     Honda breached the express warranty because it did not promptly replace or buy back the Class Vehicles of Plaintiffs and the other Class Members.

72.     Honda was put on notice of the breach by Class member's online complaints available on NHSTA, and other online public websites.

73.     In addition, Honda's express warranty has failed its essential purpose due to the Rollaway defect not being covered under either the Powertrain or Limited warranties that accompanied each Class Vehicle. Specifically, the Electric Parking Break and any update to the Vehicle Stability Assistance software within the Class Vehicles are not covered by either the Powertrain or Limited warranties.

74.     As a result of Honda's breach of its express warranties, Plaintiffs and the other Class Members received goods in a dangerous condition that substantially impairs their value to Plaintiffs and the other Class Members. Plaintiffs and the other Class Members have been damages as a result of the diminished value of the Class Vehicles and the inability to safely use their Class Vehicles.

75.     Plaintiffs and Class Members are entitled to recover all damages as a result of said breach of warranties in an amount in excess of $5,000,000.

### SECOND CLAIM FOR RELIEF
**Breach of Implied Warranties**
**(On behalf of the National Class)**

76.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

77.     Plaintiffs bring this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the New York Subclass against Honda.

78.     Honda is a manufacturer and seller, as it designed, assembled, fabricated, produced, constructed, and prepared the Class Vehicles before they were sold or leased.  Honda is a seller because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for resale, lease, or use, with actual knowledge of the Rollaway Defect.

79.     Honda impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiff and Class Members, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

80.     Honda did not effectively disclaim these implied warranties.

81.     The Class Vehicles sold by Honda were defective at the time of their sale or lease. Honda breached its implied warranty of merchantability, in that, among other things, the goods were not safe, merchantable, and reasonably suited for the ordinary purposes for which they were sold or leased.

82.    Honda, through its agent dealership, leased a Class Vehicle to Plaintiffs.

83.    Plaintiffs were persons whom Honda reasonably might have expected to purchase or lease, and use a Class Vehicle.

84.    Plaintiffs relied upon Honda's implied warranties that the Class Vehicle he leased was of merchantable quality and fit for its intended purposes.  The Rollaway Defect rendered it unreasonably dangerous and caused his vehicle to fail to move into park and fail to provide a positive indication to them that it has not been properly been placed in park.

85.    Honda placed the Class Vehicles in the stream of commerce and expected them to reach consumers without substantial change in the condition in which they were sold or leased. Indeed, a Class Vehicle reached Plaintiffs—someone who would reasonably be expected to use, consume, or be affected by the performance of a Class Vehicle—without substantial change in the condition in which it was sold or leased.

86.    The Class Vehicles are defective, and their Rollaway Defect is outlined throughout this Complaint.  Generally, their design includes a dangerous, defective shifter system.  Despite knowledge of the Rollaway Defect, Honda failed to warn consumers about the defect.

87.    In situations such as Plaintiffs'—where the driver used the Class Vehicle as intended and in a foreseeable and reasonable manner—the vehicle should not fail.

88.    Nevertheless, Plaintiffs' Class Vehicles failed, and it did so because of the Rollaway Defect that existed in the Class Vehicle at the time it left the manufacturer's control.

89.    Honda knew or should have known of the defective design of the Class Vehicles and that, as a result, they were unreasonably dangerous.

90.    Honda did not warn or alert purchasers or users of the foregoing dangers, despite knowledge of them.

91.    As a direct and proximate result of the Rollaway Defect in the Class Vehicle's design and manufacture and Honda's failures to warn, Plaintiffs have sustained injuries, damages, and loss.

92.    Honda is liable to Plaintiffs and Class Members for damages caused by the above

defects and inadequacies in the design and manufacture of the Class Vehicles.

**THIRD CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, _et seq_.**
**(On behalf of the National Class)**

93.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

94.    Plaintiffs bring this claim individually and on behalf of the National Class against Honda.

95.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

96.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

97.    The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

98.    Honda's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

99.    Honda breached these warranties as described in more detail above. Without limitation, the Class Vehicles fail to notify the driver when the vehicle is not properly in park, and fail to activate the Electric Parking Brake to prevent the vehicle from rolling away if the vehicle is not fully placed in park. The Class Vehicles share a common design defect in that the Class vehicles fail to operate as represented by Honda, specifically, that they are safe for ordinary use.

100.    Plaintiffs and Class Members have had sufficient direct dealings with Honda or its agents (dealerships or corporate representatives) to establish privity of contract between Honda, on one hand, and Plaintiffs and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended

third-party beneficiaries of contracts between Honda and its dealers and, specifically, of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

101.    Affording Honda a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Plaintiffs and many others already alerted Honda of the defect, and Honda has failed to cure the Rollaway Defect. At the time of sale or lease of each Class Vehicle, Honda knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

102.    Honda has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and Class Members, because the Class Vehicles fail to perform as represented due to the undisclosed Rollaway Defect.  Honda failed to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Class.

103.    Honda is under a continuing duty to inform its customers of the nature and existence of potential safety related defects in the Class Vehicles.

104.    Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the Rollaway Defect in the Class Vehicles.

105.    Plaintiffs and the Class seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining

Honda's wrongful acts and practices, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

106.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

107.    Plaintiffs bring this claim individually and on behalf of the New York Subclass against Honda.

108.    N.Y. Gen. Bus. Law § 349, *et seq.* ("GBL") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

109.    Plaintiffs and Class Members are reasonable consumers who do not expect their Class Vehicles to fail to notify them as to whether the car has been placed into the safe-to-exit "park" gear, nor have a safety override that automatically puts the car in "park" or applies the parking brake if the driver gets out of the car.

110.    Honda engaged in unlawful conduct, or otherwise violated the N.Y. Gen. Bus. Law § 349 by, *inter alia*, advertising the Class Vehicles as "safe" and "reliable" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the roll away defect-which is dangerously unreliable.

111.    Honda knew the Class Vehicles suffered from inherent defects, were defectively designed or manufactured, would fail to operate as intended, and were not suitable for their intended use.

112.    In failing to disclose the Rollaway Defect, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

113.    Honda had a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

      a.    Honda was in a superior position to know the true facts about the Class Vehicles' safety defect;

      b.    Honda made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and

      c.    Honda actively concealed the defective nature of the Class Vehicles from Plaintiffs and Class Members.

114.    The facts regarding the Rollaway Defect that Honda concealed from or failed to disclose to Plaintiffs and the Class are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had Plaintiffs and Class Members known that the Class Vehicles were defective and posed a safety hazard, they would not have purchased or leased Class Vehicles, or would have paid less for them.

115.    Honda continues to conceal the defective nature of the Class Vehicles, even after Class Members have reported problems.

116.    Honda's conduct was and is likely to deceive consumers. Honda's deceptive acts or practices occurred repeatedly in Honda's trade or business, and were capable of deceiving a substantial portion of the public.

117.    By engaging in the acts and practices alleged above, Honda has engaged in deceptive acts and practices in violation of GBL § 349.

### FIFTH CLAIM FOR RELIEF
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

118.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

119.    Plaintiffs bring this claim individually and on behalf of the New York Subclass against Honda.

120.    GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce in the furnishing of any service in [New York]."

121.    GBL § 350-a further provides that "false advertising" is advertising that is "misleading in a material respect."

122.    By advertising the Class Vehicles as "safe" and "reliable," Honda has engaged in false advertising in violation GBL § 350.

### SIXTH CLAIM FOR RELIEF
**Breach of Implied Warranty of Merchantability**
**(On behalf of the New York Subclass)**

123.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

124.    Plaintiffs brings this claim individually and on behalf of the New York Subclass against Honda.

125.    Honda was at all relevant times a "lessor" with respect to motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

126.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h). 1365.

127.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

128.    At all relevant times, Honda manufactured, distributed, warranted, leased, and/or sold the Class Vehicles.  Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

129.    Honda provided an implied warranty to Plaintiffs and Class Members, which warranted that the Class Vehicles, including the components parts, are merchantable and fit for the ordinary purposes for which they were sold or leased.  However, the Class Vehicles suffer from an inherent defect at the time of sale and, thereafter, are not fit for their ordinary purpose of providing reasonably safe and reliable transportation.

130.    Honda impliedly warranted that the Class Vehicles are of merchantable quality

and fit for such use.  The implied warranty includes, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Honda are safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles are fit for their intended use.

131.    Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale or lease and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective and suffer from defects that compromise their reliability, durability, and safety.

132.    As a result of Honda's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles have suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the Rollaway Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail or have failed before their expected useful life has run.  The Rollaway Defect creates a high risk of accidents, injuries, and even death.

133.    Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of N.Y. U.C.C. Law §§ 2-314 and 2A-212.

134.    Plaintiffs and the Class seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**N.Y. U.C.C. Law §§ 2-313 and 2A-210,** *et seq.*
**(On behalf of the New York Subclass)**

135.    Plaintiffs incorporate by reference the allegations contained in the preceding

paragraphs of this complaint.

136.    Honda is defined as Defendant for the purposes of this section and solely this section.

137.    Plaintiffs bring this claim individually and on behalf of the New York Subclass against Honda.

138.    With respect to leases, Honda is and was all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

139.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

140.    Defendant expressly warranted that it would cover the cost of all parts and labor to repair any item on the vehicle when it left the manufacturing plant that is defective in material or workmanship. Upon information and belief, the exact nature of the Rollaway Defect-and whether it is included in Honda's express written warranty-will be clarified through discovery.

141.    Honda materially breached its expressed warranties by selling and leasing Class Vehicles that contained the Rollaway Defect, which rendered the Class Vehicles unsafe or unfit for use as warranted. Thus, at the point of sale, the written warranties were breached by Defendants as the Class Vehicles were unreasonably dangerous and contained an inherent design defect.

142.    Defendant was put on notice of the breach by Class members' online complaints available on NHSTA and other online public websites.

143.    In addition, Defendant's express warranty has failed its essential purpose due to the Rollaway defect not being covered under either the Powertrain or Limited warranties that accompanied each Class Vehicle. Specifically, upon information and belief, the Electric Parking Break and any update to the Vehicle Stability Assistance software within the Class Vehicles are not covered by either the Powertrain or Limited warranties.

144.    As a result of Honda's breach of its express warranties, Plaintiffs and the other Class members received goods whose goods whose dangerous condition substantially impairs

their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of the Class Vehicles and the inability to use their Class Vehicles.

145.     Plaintiffs and Class members are entitled to recover all damages as a result of said breach of warranties, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.


### EIGHTH CLAIM FOR RELIEF
**Equitable Injunctive Relief and Declaratory Relief**
**(On behalf of the National Class)**

146.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

147.     Plaintiffs bring this claim individually and on behalf of the Class against Honda.

148.     Honda is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles it sells.

149.     Honda acted uniformly towards Plaintiffs and the Class Members by refusing to adequately warn about the dangers of the Rollaway Defect or offer a permanent repair of the defect.

150.     Plaintiffs, Members of the Class, and the public will suffer irreparable harm if Honda is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Class by repurchasing their Class Vehicles for their full cost and reimbursing the lessees of the Class Vehicles the monies they have paid toward their leases, recalling all Class Vehicles with the Rollaway Defect, and ceasing and desisting from marketing, advertising, selling, and leasing the Class Vehicles.

151.     Such irreparable harm includes, but is not limited to, likely injuries as a result of the Rollaway Defect in the Class Vehicles.

152.     Plaintiffs and the Class seek appropriate equitable relief, including injunctive

relief, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which they may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sheryl Tenzyk and Larry Allen, individually and on behalf of all others similarly situated, request the Court enter judgment against Honda, and accordingly requests the following:

A. An order certifying the proposed Class and New York Subclass and designating Plaintiffs as named representatives of the Classes and designating the undersigned as Class Counsel;

B. A declaration that Honda is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

C. A declaration that both the Basic Limited and Powertrain Limited Warranties fail their essential purpose;

D. An order enjoining Honda from further deceptive distribution, sales, and lease practices with respect to their Class Vehicles; to repair all other damages to the Class Vehicles caused by the Defect;

E. A further order enjoining Honda from the conduct alleged herein, including an order enjoining Honda from concealing the existence of the Defect during distribution, sales, and advertisements, as well as during customer and warranty service visits for the Class Vehicles;

F. An award to Plaintiffs and Class Members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

G. A declaration that Honda must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the sale or lease of their Class Vehicles, or make full restitution to Plaintiffs and Class Members;

H.  An award of attorneys' fees and costs pursuant to applicable laws;

I.  An award of pre-judgment and post-judgment interest, as provided by law;

J.  Any and all remedies provided pursuant to the N.Y. Gen. Bus. Law, §§ 349 and 350;

K.  Leave to amend the Complaint to conform to the evidence produced at trial;

L.  An order enjoining Honda to repair or replace the transmissions in the Class Vehicles; and

M.  Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Respectfully submitted,

AHDOOT & WOLFSON, PC

Dated: November 1, 2018

By:  _/s/ Tina Wolfson_____
Tina Wolfson
_twolfson@ahdootwolfson.com_
Bradley K. King
_bking@ahdootwolfson.com_
45 Main Street, Suite 528
Brooklyn, New York 11201
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

Gregory F. Coleman*
greg@gregcolemanlaw.com
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
J. Hunter Bryson*
Hunter@wbmllp.com
WHITFIELD BRYSON & MASON LLP
900 W. Morgan St.

28

Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
* *pro hac vice* pending

*Counsel for Plaintiffs*